UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

DIGERATI, INC.

    *Plaintiff*,

vs.

DIGERATI GROUP, LLC

    *Defendant*.

Case No. _____

Hon. _____

_____

## COMPLAINT AND JURY DEMAND

Plaintiff DIGERATI, INC. ("DI"), by its attorneys Honigman Miller Schwartz and Cohn LLP, for its Complaint against Defendant DIGERATI GROUP, LLC ("DGL"), alleges as follows:

### PARTIES, JURISDICITON, AND VENUE

1. This is an action for trademark infringement and unfair competition, under the Lanham Act, 15 U.S.C. §1501, et seq. and the common law, arising out of Defendant DGL's willful infringement of DI's registered trademarks.

2. Plaintiff DI is a Michigan corporation with its principal place of business located at 500 Griswold, Suite 3400, Detroit MI, 48226, and is the owner

1

of the asserted trademarks. DI, founded in 2001, is a process-consulting technology company that analyzes and fixes technology tools and methods in the workplace by creating solutions for clients that harness process engineering, custom software development and technology optimization.

3. On information and belief, Defendant DGL is an Illinois limited liability company with its principal place of business located at 230 W. Monroe, Suite 350, Chicago, Illinois 60606. Also based on information and belief, DGL is made up of a collection of technologists, with backgrounds in enterprise-level IT support and management, as well as web development and digital marketing, that provide technology services to clients throughout the Midwest, including in the State of Michigan, and this Judicial District.

4. This Court has subject matter jurisdiction under 15 U.S.C. §1121(a), 28 U.S.C. §§ 1331 and 1338 in that this case arises under the Lanham Act (15 U.S.C. § 1051, *et. seq.*).

5. The state law claims pleaded herein arise under the laws of the State of Michigan.

6. Personal jurisdiction over DGL is appropriate because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District and because, also on information and belief, Defendant engages in

substantial and systematic commercial activities with individuals and entities located in Michigan, has offered services or sold services within the State of Michigan in the ordinary course of trade, and otherwise has constitutionally sufficient contacts with Michigan so as to make personal jurisdiction proper in this Court. Moreover, as described further below, DGL intentionally infringed on intellectual property rights that it knew were owned by DI. DGL's actions were expressly aimed at Michigan, and caused harm in Michigan that DGL knew was likely to be suffered.

7. Subject matter jurisdiction for the state law claims pleaded herein is conferred upon the Court by 28 U.S.C. §1367.

8. Venue for this action is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events, omissions, and injuries giving rise to the claims occurred in this Judicial District, and because DGL is subject to personal jurisdiction in this Judicial District at the time this action is commenced, as described in a foregoing paragraph.

## FACTUAL BACKGROUND

### DI and its Asserted Trademarks

9. DI is a leading software development and process improvement firm that offers clients software solutions to minimize inefficiencies and drive

innovation. Founded in 2001 as Digerati Solutions, Inc., DI leverages engineering, creativity, high standards and thoughtful intelligence to solve complex problems for a wide array of clients. The Detroit-based company employs its diverse team of experts to examine operations on a micro/macro level and to create scalable solutions that harness process engineering, custom software development and technology optimization.

10. In 2009, Digerati Solutions, Inc. changed its name to Digerati, Inc., and assigned its intellectual property rights existing at that time to Plaintiff DI.

11. DI is the owner of, among other marks, the trademarks DIGERATI and DIGERATI SOLUTIONS, which are used and registered in the United States in connection with a variety of computer programming, consulting, and technical support services, among other things. DI has established valuable and enforceable trademark rights in its trademarks marks through bona fide use of the marks in commerce and related advertising.

12. On December 6, 2005, the United States Patent and Trademark Office issued to Digerati Solutions, Inc. Registration No. 3,022,548 for the DIGERATI SOLUTIONS trademark, based on a first use date at least as early as July 9, 2003. DI is the assignee of the DIGERATI SOLUTIONS trademark, which provides DI with the exclusive right to use DIGERATI SOLUTIONS in connection with

computer programming services, consulting, and technical support services in the field of the design and use of computer programs, computers, computer hardware and computer systems. The trademark ("Reg. No. '548") is incontestable. *See* DIGERATI SOLUTIONS Trademark Registration, **Ex. A**.

13. On November 22, 2011, the United States Patent and Trademark Office issued to DI Registration No. 4,058,976 for the DIGERATI trademark, based on a first use at least as early as January 4, 2007. The registration provides DI with the exclusive right to use DIGERATI in connection with computer programming services, consulting, and technical support services in the field of the design and use of computer programs, computers, computer hardware and computer systems. The trademark ("Reg. No. '976") is incontestable. *See* DIGERATI Trademark Registration, **Ex. B**.

14. Reg. No. '548 and Reg. No. '976 (the "DIGERATI Marks") were duly issued in compliance with law, and they are valid and subsisting. Further, these registrations have become incontestable.

15. DI also owns common law rights in the DIGERATI trademark in word and stylized forms that pre-dates the use dates claimed in DI's registrations. DI's website is located at the domain name www.digerati.co.

16.     DI has an industry-wide reputation for providing the highest quality software and service solutions. DI has invested extensive time and resources into building the goodwill associated with its DIGERATI Marks.  As a result of these efforts, the DIGERATI Marks enjoy a high degree of recognition and goodwill throughout the United States and customers recognize the mark as identifying the goods and services of DI and distinguishing them from others.

17.     DI uses the DIGERATI Marks in a prominent fashion in its marketing materials, on its software, on its website, and elsewhere.

18.     The DIGERATI Marks embody DI's considerable goodwill, and are extremely valuable assets.

**Defendant's Unauthorized Use of DI's Trademarks In Connection With the
Same Types of Goods and Services Offered by DI**

19.     Upon information and belief, DGL is a computer services and software provider that promotes itself as "a motley collection of technology experts, headquartered in downtown Chicago, Illinois. With a background in enterprise-level IT support and management, as well as the ever-evolving realm of web development and digital marketing, we understand the intricacies of the digital multiverse. Our talented and diverse teams, whom we affectionately moniker, 'Tech Heroes,' are primed to be your premier, full-service technology providers." **Ex. C** (Digeratigroup.com website).

20. DGL uses the DIGERATI Marks, in commerce, including as follows:

    a. In its internet domain name <Digeratigroup.com> as the location of its commercial website;

    b. On its website, on Facebook, and on Twitter (as shown below); and





7



c. In marketing and promotional materials.

DI will refer to these acts of infringement collectively as the "Infringing Marks."

21. These uses, both individually and collectively, are likely to cause confusion, mistake, and/or deception as to the relationship of DI and DGL. Third parties have already expressed and experienced actual confusion between DI and DGL. Thus, DI believes third parties are likely to continue to mistakenly assume that DGL is related to, affiliated with, or sponsored by DI, when that is not the case. As a result of Defendant's use of the Infringing Marks, DI has and will continue to suffer harm.

8

22. The Infringing Marks are used in connection with services offered in the same marketing channels that DI uses to offer and sell its DIGERATI-branded services, and to the same or similar target customers.

23. Defendant is not authorized to use the DIGERATI Marks (or confusingly similar variations thereof) in connection with its business or in any manner that is likely to express or imply to the purchasing public that they have been authorized by or are affiliated with or sponsored by DI.

24. The Infringing Marks are virtually identical to DI's DIGERATI Marks. Defendant's use of the Infringing Marks in connection with computer and information technology services, as well as marketing and web development, has already caused confusion and is likely to continue to cause confusion, mistake, or deception of consumers regarding the source or origin of Defendant's services or the relationship of Plaintiff and Defendant.

25. On or about December 8, 2009, DGL filed Trademark Application No. 77/888,537, **Ex. D**, with the United States Patent and Trademark Office ("PTO") in International Class 42 for the following design plus words and letters trademark:



DGL's Application No. 77/888,537 ("DGL's App"), based on a first use date of January 1, 2005, was filed in connection with the following goods and services:

> Managed hosting in the nature of hosting computer software, Internet websites, Internet web software applications, electronic databases, digital content, spam filtering, email and business computer software applications of others that are accessible via the Internet; managed hosting in the nature of hosting computer software, Internet websites, Internet web software applications, electronic databases, digital content, spam filtering, email and business computer software applications of others that are accessible via the Internet through the use of secure and environmentally controlled computer facilities; managed hosting in the nature of leasing, updating, repairing, troubleshooting, customization, and monitoring, reporting on, and optimizing the performance of computer software that supports hosted computer software, Internet websites, Internet web software applications, electronic databases, digital content, spam filtering, email and business computer software applications of others that are accessible via the Internet; managed hosting in the nature of leasing, updating, repairing, troubleshooting, customization, and monitoring, reporting on, and optimizing the performance of computer software that supports hosted computer software, Internet websites, Internet web software applications, electronic databases, digital content, spam filtering, email and business computer software applications of others that are accessible via the Internet.

26. On or about December 10, 2010, the PTO issued a final office action refusing registration of DGL's App. because of a likelihood of confusion with DI's DIGERATI SOLUTIONS trademark, Reg. No. '548. *See* **Ex. E**. DGI failed to respond to the office action, abandoning the application on July 15, 2011. *See* **Ex. F**.

27. Defendant's infringement has been willful and deliberate, designed specifically to trade on the goodwill associated with the DIGERATI Marks insofar as DGL had actual and express knowledge of DI and DI's Reg. No. '548 at least on or by December 10, 2010. Despite the knowledge that its DIGERATI GROUP mark and application was refused by the PTO for likelihood of confusion with DI's DIGERATI SOLUTIONS trademark, DGL has continued the infringing and willful use of the DIGERATI and DIGERATI GROUP marks.

## COUNT I
## FEDERAL TRADEMARK INFRINGEMENT UNDER 15 U.S.C. §§1114

27. The allegations of the foregoing paragraphs are incorporated herein by reference.

28. The DIGERATI Marks are distinctive. DI possesses exclusive, valid, incontestable, and enforceable trademark rights in the DIGERATI Marks in connection with all of the goods and services at issue in this case, and has possessed such rights at all times material hereto.

29. Defendant has no right or authority to perform, sell, or otherwise offer in commerce any goods or services in connection with the DIGERATI Marks or the Infringing Marks.

30. Despite DI's well-known prior rights, DGL has used and continues to use in commerce without the consent of DI, one or more DIGERATI Marks in

connection with the sale, offering for sale, distribution, and/or advertising of DGL's goods and services. Such use has already caused confusion and is likely to continue to cause confusion, mistake, or deception among consumers.

31.    Defendant is marketing and using its Infringing Marks in substantially the same geographic areas and marketing channels, and to substantially the same customer base, with which DI uses its DIGERATI Marks.

32.    DGL's actions constitute willful infringement of DI's exclusive rights in one or more of the DIGERATI Marks in violation of 15 U.S.C. §§1114.

33.    DGL's use of the DIGERATI Marks has been and continues to be done with the intent to cause confusion, mistake, and to deceive customers concerning the source and/or sponsorship of DGL's services.

34.    Because DGL knowingly and intentionally used one or more of the DIGERATI Marks in connection with its goods and services, this is an exceptional case within the meaning of 15 U.S.C. § 1117(a).

35.    As a direct and proximate result of DGL's conduct, DI has suffered irreparable harm to the valuable DIGERATI Marks and its reputation in the industry, and other damages in an amount to be proved at trial. Unless Defendant is restrained from further infringement of the DIGERATI Marks, DI will continue to be irreparably harmed.

36. DI has no adequate remedy at law that will compensate for the continued and irreparable harm it will suffer if Defendant's acts are allowed to continue.

## COUNT II
## UNFAIR COMPETITION AND FALSE ADVERTISING
## UNDER 15 U.S.C. §1125

37. The allegations of the foregoing paragraphs are incorporated herein by reference.

38. By virtue of the actions described above, DGL has unfairly competed with DI, and has caused, and is causing, a likelihood of confusion, mistake, or deception as to the affiliation, connection, or association of DGL with DI, or as to the origin, sponsorship, or approval of DGL's goods, services, or commercial activities by DI, all in violation of 15 U.S.C. §1125(a) and other applicable federal, state, and common laws.

39. By virtue of the actions described above, DGL has, in commercial advertising and promotion of the Infringing Marks, misrepresented the nature, characteristics, or qualities of DGL's goods, services, or commercial activities, all in violation of 15 U.S.C. §1125 and other applicable federal, state, and common laws.

40. At all material times, DGL's actions have been willful, knowing and intentional.

41. Such actions have caused injury to DI, and DGL is liable to DI for the same.

42. DGL's actions were knowing and intentional and thus render this case exceptional within the meaning of 15 U.S.C. § 1117(a).

43. DGL's acts constitute false and misleading descriptions of fact, false advertising, and false designations of the origin and/or sponsorship of DGL's goods and services, and constitute a violation of 15 U.S.C. § 1125(a).

44. By reason of DGL's actions, DI has suffered irreparable harm to its valuable trademarks. Unless DGL is restrained from its actions, DI will continue to be irreparably harmed.

45. DI has no remedy at law that will compensate it for the continued and irreparable harm that will be caused if DGL's acts are allowed to continue.

46. As a direct and proximate result of DGL's conduct, DI has suffered damages to the valuable DIGERATI Marks, and other damages in an amount to be proved at trial.

## COUNT III
## UNFAIR TRADE PRACTICES UNDER MICHIGAN STATUTE MICH. COMP. LAWS §§ 445.901 et seq. and COMMON LAW OF MICHIGAN

47. The allegations of the foregoing Paragraphs are incorporated herein by reference.

48. Defendant's use of the Infringing Marks are likely to cause confusion or mistake, or to deceive as to Defendant's affiliation, connection, or association with DI, or as to the origin, sponsorship, or approval of Defendant's' services.

49. Defendant's acts constitute unfair trade practices in violation of Michigan Statute Mich. Comp. Laws §§ 445.901 et seq., and the common law of the State of Michigan.

50. The actions, conduct, and practices of Defendant described above have at all times relevant to this action been willful, in bad faith and/or knowing.

## DEMAND FOR RELIEF

WHEREFORE, DI respectfully requests entry of a judgment granting relief against the Defendant as follows:

A. Entering judgment in DI's favor and against Defendant on all counts of the Complaint.

B.     A determination that Defendant willfully violated the Lanham Act, that DI has been damaged by such violations, and that Defendant is liable to DI for such violations;

C.     A determination that DGL committed common law trademark infringement, that DI has been damaged by such infringement, and that DGL is liable to DI for common law trademark infringement;

D.     A determination that this case is "exceptional" in the sense of 15 U.S.C. §1117(a);

E.     Under all claims for relief, that an injunction be permanently issued enjoining Defendant and its officers, employees, agents, successors and assigns, and all those in active concert and participation with Defendant, and each of them who receives notice directly or otherwise of such injunctions, from:

>   (1)     imitating, copying, or making any unauthorized use of the DIGERATI Marks, or marks likely to cause confusion with them, including but not limited to the Infringing Marks;
>
>   (2)     importing, manufacturing, producing, distributing, circulating, selling, offering for sale, advertising, promoting or displaying any service or product using any simulation, reproduction, counterfeit, copy, or colorable imitation of the DIGERATI Marks, including but not limited to the Infringing Marks;
>
>   (3)     using any simulation, reproduction, counterfeit, copy or colorable imitation of the DIGERATI Marks in connection with the promotion, advertisement, display, sale, offer for sale, manufacture,

16

production, circulation or distribution of any product or service, including but not limited to the Infringing Marks; and

(4) using any false designation of origin or false description (including, without limitation, any letters, symbols, or designs constituting the DIGERATI Marks) or performing any act, which can, or is likely to, lead members of the trade or public to believe that any service or product manufactured, distributed or sold by Defendant is in any manner associated or connected with DI or the DIGERATI Marks, or is sold, manufactured, licensed, sponsored, approved or authorized by DI.

F. An Order directing that Defendant deliver for destruction all products, promotional and advertising materials, business cards, labels, tags, signs, prints, packages, videos or other materials in its possession or under its control, bearing or using unauthorized versions of the DIGERATI Marks or any simulation, reproduction, counterfeit, copy or colorable imitation thereof (including but not limited to the Infringing Marks), and all plates, molds, matrices and other means of making the same, pursuant to 15 U.S.C. § 1118;

G. An Order directing the transfer of the <DigeratiGroup.com> Domain Names to DI or its designee;

H. An Order directing such other relief as the Court may deem appropriate to prevent the trade and public from deriving the erroneous impression that any service or product manufactured, sold or otherwise circulated or promoted

by Defendant is authorized by DI or related in any way to DI's products and services;

      I.      An Order directing the Defendant and its agents, employees, servants, attorneys, successors, and assigns, and all others in privity or acting in concert therewith, to file with this Court, and serve upon DI's counsel within thirty (30) days after entry of such judgment, a written report under oath, setting forth in detail the manner and form in which they have complied with such judgment;

      J.      An Order permitting DI, and/or auditors of DI, to audit and inspect the books, records, and premises of the Defendant and related entities for a period of six (6) months after entry of final relief in this matter, to determine the scope of the Defendant's past use of DI intellectual property, including all distribution and sales of products and services bearing the DIGERATI Marks or marks likely to cause confusion or dilution with them, as well as the Defendant's compliance with the orders of this Court;

      K.      An award of DI's costs and disbursements incurred in this action, including DI's reasonable attorney's fees;

      L.      An award of DI's damages trebled or, alternatively, an award of Defendant's wrongful profits trebled, whichever is greater, plus DI's costs and attorney's fees, pursuant to 15 U.S.C. § 1117;

M.     An award to DI of its costs incurred in this action, including an award of reasonable attorney fees under 17 U.S.C. § 1114;

N.     An award of DI's damages arising out of Defendant's acts;

O.     An Order requiring Defendant to file with the Court and provide to DI an accounting of all sales and profits realized by Defendant through the use of the DIGERATI Marks and any confusingly similar marks or counterfeits, copies, reproductions or colorable imitations thereof (including but not limited to the Infringing Marks);

P.     An award of interest, including pre-judgment interest on the foregoing sums; and

Q.     Such other and further relief as the Court may deem just and appropriate.

## **JURY DEMAND**

DI respectfully requests a jury trial on all claims so triable.

Dated: March 2, 2017

Respectfully submitted,

HONIGMAN MILLER SCHWARTZ AND COHN LLP

By: /s/ Deborah J. Swedlow
Anessa Owen Kramer (P63986)
Deborah J. Swedlow (P67844)
315 E. Eisenhower Parkway, Suite 100
Ann Arbor, MI 48108
Tel: (734) 418-4268
Fax: (734) 418-4269
akramer@honigman.com
bswedlow@honigman.com

Attorneys for Plaintiff